UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN WIRE GROUP, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| WTEC HOLDINGS CORP. d/b/a WTEC ENERGY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff American Wire Group, LLC ("AWG"), by its attorneys, Fox Swibel Levin & Carroll, LLP, for its Complaint against WTEC Holdings Corp. d/b/a WTEC Energy ("WTEC"), states as follows:

## NATURE OF ACTION

1. AWG is in the business of supplying electric wire and cable product for various commercial and industrial uses. AWG contracts with manufacturers, such as WTEC, to manufacture the wire and cable hardware that AWG then provides its customers.

2. This case arises from AWG's purchase of cable from WTEC that turned out to be defective in nature, depriving AWG of the benefit of its bargain with WTEC. Moreover, because of WTEC's sale of defective cable, which AWG then provided to customers, AWG has incurred damages to defend and settle claims from AWG's customers in connection with WTEC's cable.

3. Accordingly, AWG now seeks to recover those damages from WTEC.

## PARTIES

4. AWG is a limited liability company organized under the laws of Florida, with its

1

principal place of business located in Aventura, Florida.

5. AWG maintains offices located in Cook County, Illinois, from which representatives of AWG negotiated and issued the purchase order at issue with WTEC.

6. On information and belief, WTEC is a corporation organized under the laws of New Jersey, with its principal place of business located in Hasbrouck Heights, New Jersey.

7. WTEC sells its products throughout the entire country.

## JURISDICTION & VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because AWG and WTEC are citizens of different States and the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to AWG's claim against WTEC occurred in this district.

10. WTEC transmitted communications to AWG's offices in Cook County, Illinois, including communications that: (a) contained statements, representations, and affirmations of fact that the cable purchased by AWG would conform with industry standards; and (b) became part of the basis of AWG's bargain with WTEC.

11. AWG's President, responsible for the supply chain, oversaw the transactions at issue with WTEC and will be AWG's main witness to testify on the events described herein, resides in Chicago.

12. AWG's President conducted and supervised the negotiations and transactions at issue from AWG's offices in Cook County, Illinois.

13. AWG issued the purchase order at issue to WTEC from AWG's offices in Cook

County, Illinois.

**FACTS COMMON TO ALL COUNTS**

14. As part of its wire and cable supply business, AWG supplies electric photovoltaic wire and cabling to customers in the renewable energy industry.

15. AWG contracts with manufacturers for the purchase of cable and wiring that AWG then supplies to its customers.

16. To ensure that the product AWG supplies is of the highest quality, AWG mandates that the manufacturers from which AWG purchases wiring and cable comply with industry standards such as UL (defined below) as required by the national electrical code.

*WTEC Represented That Its Cables*
*Would Comply With Industry Standards*

17. UL, LLC ("UL") is a safety certification company that promulgates standards of safety and efficacy for numerous products, including electric wires and cables.

18. UL maintains a directory of UL-certified products and manufacturers.

19. UL provides a "Multiple Listing" program which provides a company the right to include the company's name in UL's directory. The program also offers companies the ability to use a UL mark ("UL Mark") on the product exterior, indicating that the product is certified as conforming with UL standards.

20. In February 2018, AWG and WTEC entered into a Multiple Listing Dual Authorization Form, pursuant to which UL would permit WTEC to place a UL Mark on cable that WTEC manufactured for AWG, and which would bear AWG's name and other identifying information.

21. In the spring of 2020, AWG began discussions with WTEC about purchasing a large quantity of photovoltaic cable ("Cable") for AWG's general stock, which AWG would then

have on-hand to sell to AWG's customers.

22. The Cable would be comprised of an aluminum conductor encased in in cross-linked polyethylene thermoset plastic insulation pursuant to the UL standard.

23. On February 1, 2021, WTEC sent a price quote and Product Data Sheet to AWG representatives, including AWG representatives located at AWG's offices in Cook County, Illinois.[1]

24. The price quote set forth several line items for the specific Cable that AWG would purchase from WTEC. The line item descriptions identified several characteristics of the cables, including a "UL4703" descriptor which denoted that the cables would comply with UL standard 4703 ("UL 4703").

25. UL 4703 is an industry standard designation for cable that is to be installed and energized in accordance with the National Electrical Code.

26. The Product Data Sheet that WTEC sent to AWG stated:

> This specification covers single conductor, UL listed, 2000 volt rated PV (photovoltaic) wire used in solar applications. The cable consists of a compact stranded Series 8000 aluminum alloy conductor insulated with cross-linked polyethylene (XLPE). **The cable is constructed in accordance with UL 4703**. The cable is rated for 2000 V, 90°C wet or dry, and for -40°C cold temperature applications. The cable is sunlight resistant and is suitable for direct burial. The cable meets USE-2 rating requirements specified in UL 854.[2]

27. Under a section titled "Applicable Standards," WTEC's Product Data Sheet stated that "The cables produced under this specification will comply with all applicable requirements of the following standard, which are the principle standards of this product:

---

[1] A true and accurate copy of the price quote is attached hereto as Exhibit 1. A true and accurate copy of the Product Data Sheet is attached hereto as Exhibit 2.

[2] Exhibit 2 (emphasis added).

4

- **UL 44** – Standard for Thermoset-Insulated Wires and Cables
- **UL 854** – Specification for Service entrance cables rated USE, USE-2 and SE
- **UL 4703** – Specification for Photovoltaic Wire rated 600, 1000 or 2000V
- **IEEE 1202 FT4** – For sizes 1/10 and larger."

28. On February 5, 2021, AWG issued Purchase Order No. 00121022 ("PO") to WTEC in the amount of $646,549.50 from AWG's offices in Chicago.[3]

29. The PO set forth the text that WTEC would include on the physical markings on each reel of Cable that WTEC agreed to provide under the PO. Each Cable's marking included a UL Mark and stated that the cable was "UL Type."

30. The text also included markings for the Cable's ratings for voltage, temperature, and sunlight thresholds.

31. The text printed on the Cable comprised representations indicating compliance with the marked standards.

### AWG Receives Claims from Customers in Connection with WTEC's Cable

32. In June 2021, AWG received a notice of claim from a customer. The customer informed AWG that the insulation of WTEC-manufactured Cable was cracking after the Cable was installed at an energy storage facility.

33. Shortly after receiving this information from its customer, AWG advised WTEC of the cracked insulation.

34. In July 2021, representatives of AWG and WTEC visited the energy storage facility to observe the cracked insulation on the installed Cable.

35. In late July 2021, AWG's customer sent AWG an estimate of the costs to remove

---

[3] A true and accurate copy of the PO is attached hereto as <u>Exhibit 3</u>.

and replace the WTEC-manufactured Cable.

36. In mid-September 2021, AWG sent WTEC a letter demanding that WTEC indemnify AWG against claims from AWG's customers arising from WTEC-manufactured Cable.

37. WTEC refused AWG's demand.

38. In late September 2021, AWG settled the claim AWG's customer had asserted against AWG based on WTEC's Cable, pursuant to which AWG agreed to provide its customer a payment and a credit.

39. AWG has received additional claims other from customers arising from WTEC-manufactured Cable and is incurring costs to defend and negotiate resolution of those claims.

***AWG Has WTEC's Cable Tested***

40. After AWG received notice of the potential issues with WTEC-manufactured Cable, AWG engaged a third party testing company, which has been certified as a Nationally Recognized Testing Lab by the Occupational Safety and Health Administration ("OSHA"), to perform tests on seven samples of Cable that AWG provided to the testing company.

41. WTEC stamped its cables with a mark indicating that they were insulated with "Class XL," or "cross-linked," material.

42. Class XL or cross-linked material is "thermoset," which means that it remains in a permanent solid state after being cured a single time.

43. "Thermoset" materials differ from "thermoplastic" materials, which can be re-melted and change shape after being cured.

44. The testing company subjected the Cable samples to dimensional measurements and physical properties testing, including tensile and elongation before and after air oven aging,

in accordance with the UL 4703 standard.

45. Because the Cables were marked as thermoset material, the sample Cable should have retained its shape after being subjected to the air oven aging.

46. Instead, the sample Cable melted.

47. Of the seven Cable samples that were tested, only *one* met the requirements specified in UL 4703.

48. The remaining samples showed non-compliant results when tested for physical properties.

<strong>COUNT I<br><u>BREACH OF CONTRACT</u></strong>

49. AWG incorporates by reference Paragraphs 1 – 48 of this Complaint as though fully set forth herein.

50. The PO entered into by AWG and WTEC constitutes a valid and enforceable contract.

51. AWG substantially complied with all material terms of the PO.

52. WTEC materially breached the PO by manufacturing Cable that was defective and not in compliance with industry standards, including but not limited to the UL 4703 standard.

53. To the extent that AWG may not have complied with all terms of the PO, which AWG denies, such nonperformance was justified by WTEC's material breach of the PO.

54. To date, AWG has incurred over $1,500,000 in damages as a result of WTEC's breach, including: (a) costs incurred to defend and settle claims asserted by AWG's customers, including attorneys' fees incurred in connection with claims from AWG's customers; and (b) the loss of saleable value of WTEC-manufactured Cable that AWG currently retains in its general

stock.

55. On information and belief, the costs incurred to defend and settle claims from AWG's customers, including attorneys' fees incurred in connection therewith, were reasonably foreseeable and within the contemplation of AWG and WTEC at the time they entered into the PO.

WHEREFORE, Plaintiff AWG demands trial by jury and respectfully requests that judgment be entered in in its favor and against WTEC for damages in an amount to be proven at trial, together with pre- and post-judgment interest, and such other and further relief as this Court deems just and appropriate under the circumstances.

## COUNT II
## BREACH OF EXPRESS WARRANTY

56. AWG incorporates by reference Paragraphs 1 – 55 of this Complaint as though fully set forth herein.

57. By placing a UL Mark and other markings on its Cable, WTEC made an affirmation of fact and/or a promise that the Cable would conform with UL standards and other industry standards, including but not limited to the UL 4703 standard.

58. These markings, and the compliance with industry standards that the markings represented, formed part of the basis of AWG's transaction with WTEC for the purchase of WTEC-manufactured Cable.

59. The Cable manufactured by WTEC did not comply with the UL standards and other industry standards indicated by the markings, the cracking on insulation, and as determined by the independent third party evolution.

60. AWG provided notice to WTEC of the defective nature of the Cable prior to the filing of this action.

61. AWG has incurred over $1,500,000 in damages as a result of WTEC's breach, including: (a) costs incurred to defend and settle claims asserted by AWG's customers, including attorneys' fees incurred in connection with claims from AWG's customers; and (b) the loss of saleable value of WTEC-manufactured Cable that AWG currently retains in its general stock.

62. On information and belief, the costs incurred to defend and settle claims from AWG's customers, including attorneys' fees incurred in connection therewith, were reasonably foreseeable and within the contemplation of AWG and WTEC at the time they entered into the PO.

WHEREFORE, Plaintiff AWG demands trial by jury and respectfully requests that judgment be entered in in its favor and against WTEC for damages in an amount to be proven at trial, together with pre- and post-judgment interest, and such other and further relief as this Court deems just and appropriate under the circumstances.

## COUNT III
## BREACH OF IMPLIED
## WARRANTY OF MERCHANTABILITY

63. AWG incorporates by reference Paragraphs 1 – 62 of this Complaint as though fully set forth herein.

64. WTEC is a merchant with respect to the Cables by virtue of dealing with Cables as part of WTEC's standard business operations.

65. The Cable sold by WTEC was not merchantable at the time of sale due to the Cable's defective nature.

66. AWG provided notice to WTEC of the defective nature of the Cable prior to the filing of this action.

67. AWG has incurred over $1,500,000 in damages as a result of WTEC's breach,

including: (a) costs incurred to defend and settle claims asserted by AWG's customers, including attorneys' fees incurred in connection with claims from AWG's customers; and (b) the loss of saleable value of WTEC-manufactured Cable that AWG currently retains in its general stock.

68. On information and belief, the costs incurred to defend and settle claims from AWG's customers, including attorneys' fees incurred in connection therewith, were reasonably foreseeable and within the contemplation of AWG and WTEC at the time they entered into the PO.

WHEREFORE, Plaintiff AWG demands trial by jury and respectfully requests that judgment be entered in in its favor and against WTEC for damages in an amount to be proven at trial, together with pre- and post-judgment interest, and such other and further relief as this Court deems just and appropriate under the circumstances.

## COUNT IV
## BREACH OF IMPLIED WARRANTY
## OF FITNESS FOR A PARTICULAR PURPOSE

69. AWG incorporates by reference Paragraphs 1 – 68 of this Complaint as though fully set forth herein.

70. On information and belief, WTEC knew, or had reason to know, at the time that AWG issued the PO that AWG would be supplying to its customers Cable that needed to meet certain specifications, including but not limited to compliance with UL standards and other industry standards.

71. AWG relied on WTEC's skill and judgment to manufacture and select the Cable that was suitable for AWG and the needs of AWG's customers.

72. The Cable manufactured by WTEC was not suitable for AWG or AWG's customers because the Cable was defective and did not comply with UL and other industry

standards.

73. AWG provided notice to WTEC of the defective nature of the Cable prior to the filing of this action.

74. AWG has incurred over $1,500,000 in damages as a result of WTEC's breach, including: (a) costs incurred to defend and settle claims asserted by AWG's customers, including attorneys' fees incurred in connection with claims from AWG's customers; and (b) the loss of saleable value of WTEC-manufactured Cable that AWG currently retains in its general stock.

75. On information and belief, the costs incurred to defend and settle claims from AWG's customers, including attorneys' fees incurred in connection therewith, were reasonably foreseeable and within the contemplation of AWG and WTEC at the time they entered into the PO.

WHEREFORE, Plaintiff AWG demands trial by jury and respectfully requests that judgment be entered in in its favor and against WTEC for damages in an amount to be proven at trial, together with pre- and post-judgment interest, and such other and further relief as this Court deems just and appropriate under the circumstances.

## COUNT V
## IMPLIED INDEMNITY

76. AWG incorporates by reference Paragraphs 1 – 75 of this Complaint as though fully set forth herein.

77. WTEC breached the PO by manufacturing Cable that was defective and not compliant with UL standards and other industry standards.

78. WTEC's breach of the PO caused AWG to be exposed to claims for breach of contracts with AWG's customers.

79. AWG has incurred over $1,500,000 in damages as a result of WTEC's breach of

the PO in the form of costs incurred to defend and settle claims asserted by AWG's customers, including attorneys' fees incurred in connection with claims from AWG's customers.

80. These damages naturally arise from WTEC's breach of the PO.

81. On information and belief, these damages were reasonably within the contemplation of AWG and WTEC as a probable result of WTEC breaching the PO.

WHEREFORE, Plaintiff AWG demands trial by jury and respectfully requests that judgment be entered in in its favor and against WTEC for damages in an amount to be proven at trial, together with pre- and post-judgment interest, and such other and further relief as this Court deems just and appropriate under the circumstances.

## JURY DEMAND

AWG demands trial by jury on all counts set forth in this Complaint.

Dated: January 14, 2022

Respectfully submitted,

AMERICAN WIRE GROUP, LLC

　　　　/s/ Daniel A. Dorfman　　　　
One of its Attorneys

Daniel A. Dorfman (ddorfman@foxswibel.com)
Richard S. Wilson (rwilson@foxswibel.com)
**Fox Swibel Levin & Carroll LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200